DELMAR F. WHITE v. NORTH CAROLINA BOARD OF PHARMACY

No. 7710SC372

(Filed 7 March 1978)

1. **Physicians, Surgeons and Allied Professions § 6.2— pharmacist—license revocation hearing—competency of evidence**

Petitioner's contention that G.S. 143-318 applied to the hearing at which his license to practice pharmacy was revoked is correct, but his contention that his hearing was tainted with evidence which should not have been admitted is without merit, since the findings of fact made by the Board did not rely upon that evidence to which petitioner excepted, and the Board's conclusions were based upon facts supported by competent evidence.

2. **Physicians, Surgeons and Allied Professions § 6.2— pharmacist—license revocation hearing—failure to keep records—sufficiency of evidence**

 Evidence of petitioner's guilty plea in federal court to a charge of knowingly and unlawfully refusing to keep an accurate record of controlled substances in his possession was competent evidence which supported the Board's conclusion that petitioner wilfully failed to comply with the law governing the practice of pharmacy.

APPEAL by petitioner from *Bailey, Judge*. Judgment entered 17 December 1976, in Superior Court, WAKE County. Heard in the Court of Appeals 10 February 1978.

On 26 November 1975 the North Carolina Board of Pharmacy (hereinafter Board) entered an order revoking petitioner's license to practice pharmacy. The Board had held an administrative hearing on 18 November 1975 and, at the conclusion of the hearing, found that on two separate occasions in 1974 petitioner was audited by agents of the Federal Drug Enforcement Administration; that, on the first occasion petitioner was unable to account for 3,178 tablets of morphine sulfate with atropine, and on the second occasion he was unable to account for 76 tablets of morphine; that petitioner entered a plea in federal court of guilty for "knowingly and unlawfully" refusing to keep an accurate record of morphine sulfate; that petitioner was sentenced to one year imprisonment, but that the sentence was suspended and petitioner was placed on probation for five years. The Board concluded that petitioner had wilfully failed to comply with both state and federal law governing the practice of pharmacy, and ordered that his license to practice be revoked.

Petitioner sought judicial review and the Superior Court of Wake County made findings of fact and conclusions of law upholding the Board's actions. Petitioner appealed.

*Murdock, Jarvis & LaBarre, by David Q. LaBarre, for petitioner appellant.*

*Bailey, Dixon, Wooten, McDonald & Fountain, by Kenneth Wooten, Jr., for respondent appellee.*

ARNOLD, Judge.

[1] G.S. 90-65(a)(7) provides, *inter alia*, that the Board of Pharmacy may, after due notice and a hearing, revoke any license

issued by it to any pharmacist for his "[w]illful failure to comply with the laws governing the practice of pharmacy and the distribution of drugs." Pursuant to this provision a hearing was held and petitioner's license was revoked. Petitioner, however, contends that the Board of Pharmacy is governed by the rules of evidence contained in G.S. 143-318, that his hearing was tainted with evidence which should not have been admitted, and that the order revoking his license was prejudiced thereby.

We agree with the petitioner that G.S. 143-318 applies to the hearing at which his license was revoked. Our statutes concerning the practice of pharmacy, G.S. 90-53 *et seq.*, do not specifically deal with what rules of evidence are applicable to hearings under G.S. 90-65. The Uniform Revocation of Licenses, G.S. 150-9 *et seq.*, which was effectively repealed after the hearing in question, defined "board" to exclude the North Carolina Board of Pharmacy (G.S. 150-9). Hence, we look to G.S. 143-318 for the rules of evidence to apply in administrative proceedings before the Board of Pharmacy.

G.S. 143-318(1) reads:

"Incompetent, irrelevant, immaterial, unduly repetitious, and hearsay evidence shall be excluded. The rules of evidence as applied in the superior and district court divisions of the General Court of Justice shall be followed."

Before the introduction of any evidence petitioner moved for and was granted a blanket objection to all the evidence and its competency. He now complains that evidence containing hearsay and opinion was repeatedly allowed. An obvious disadvantage of such blanket objections is presented in the instant case. It was after the fact that petitioner went through the record and noted evidence which he now claims to have been erroneously admitted. He failed to call the Board's attention to such testimony by objecting when the evidence was presented. Hence the Board was not called upon to disregard evidence that may have been prejudicial.

In any event, the findings of fact made by the Board do not rely upon that evidence to which petitioner excepts. Findings of fact were made concerning the audits of petitioner's stock of morphine sulfate and petitioner's guilty plea in the United States

District Court for the Middle District of North Carolina. Evidence of the audits came in without objection. The guilty plea was stipulated to by counsel. Assuming that incompetent evidence was admitted by the Board we can find no prejudice to petitioner. The Board's conclusions were based upon facts supported by competent evidence.

[2]   We next address petitioner's argument that the Board's conclusion that petitioner "wilfully" failed to comply with both state and federal laws governing the practice of pharmacy is not supported by competent evidence. This argument fails. Evidence of petitioner's guilty plea in federal court is competent evidence which supports the Board's conclusion that petitioner "wilfully" failed to comply with the law. The federal indictment to which petitioner pled guilty reads, in part, that petitioner

> "did knowingly and unlawfully refuse and fail to keep a complete and accurate record of morphine sulfate, one-quarter (1/4) grain, and atropine one one-fiftieth (1/150th) grain tablets, the principal ingredient of which is morphine, a Schedule II Controlled Substance, which tablets were received, sold, delivered, dispensed, distributed, possessed and otherwise disposed of at and by Mebane Drug Company during the period aforesaid, as required by Title 21, United States Code, Section 827(a)(3), and 21 CFR 1304.21 and 1304.24 in that the available records of Mebane Drug Company showed a shortage of approximately 3,254 tablets representing an unaccounted-for shortage of approximately nineteen percent (19%) of the total accountability; in violation of Title 21, United States Code, Section 842(a)(5)."

Moreover, contrary to petitioner's assertion, evidence of the guilty plea supports the Board's finding that petitioner violated state law as set forth in Chapter 90, Article 5 of the General Statutes. G.S. 90-104, at the time of petitioner's hearing, read as follows:

> "Each registrant or practitioner manufacturing, distributing, or dispensing controlled substances under this Article shall keep records and maintain inventories in conformance with the record-keeping and the inventory requirements of the federal law and shall conform to such rules and

regulations as may be promulgated by the North Carolina Drug Authority."

Judgment of Superior Court affirming the 26 November 1975 order of the North Carolina Board of Pharmacy is accordingly

Affirmed.

Judges PARKER and MARTIN concur.